Bennie **WALKER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 47202.

Court of Criminal Appeals of Texas.

Dec. 5, 1973.

William L. Fly, Hillsboro, for appellant.

Martin Eichelberger, Dist. Atty. and Ward Casey, Asst. Dist. Atty., Waco, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

McCLOUD, Commissioner.

This is an appeal from a conviction for murder with malice wherein punishment was assessed at life. The trial was conducted in McLennan County following a change of venue from Hill County.

On March 25, 1971, Milton C. Boortz, City Marshall of Malone, was shot and killed following a robbery at a liquor store in Malone. Appellant was arrested the next day in Dallas. The following day, March 27, appellant signed a detailed and lengthy written confession stating that he and two other men committed the robbery; that as they drove from the liquor store they were followed by a car; that a man in the car stopped them; and that one of the men participating in the robbery shot the man who had stopped their car.

The sufficiency of the evidence is not challenged and the appellant did not testify.

In his first ground of error appellant contends the trial court erred in admitting into evidence his statement because there was no showing that he was advised of his right to consult with counsel before answering any questions or during interrogation. Appellant argues that the requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Article 38.22, Vernon's Ann.C.C.P., were not met.

The confession recites that it was given to Sheriff Ernest Brooks. At the time of trial Sheriff Brooks was deceased. The warning portion of the statement recites:

"I, Bennie Walker, before being interviewed, interrogated or questioned by Sheriff Ernest Brooks on March 27, 1971 at 5:25 P.M., at Waco, Texas and before making this statement was warned by Sheriff Ernest Brooks, the person to whom this statement is given, that (1) I had and have the right to remain silent and not make any statement at all and that any statement I make may be used in evidence against me at my trial; (2) I had and have the right to an attorney, and that if I am unable to employ an attorney one will be provided for me; (3) I had and have the

right to have an attorney or lawyer present to advise me prior to and during any questioning or interrogation by peace officers or attorneys for the State; and (4) I had and have a right to terminate the questioning, interview or interrogation at any time.

"I understand my rights as set out in this warning and knowing what they are I freely and voluntarily, without being forced or compelled by promises, threats or persuasion, waive these rights and make the following statement in writing:"

Texas Ranger Bill Gunn testified that he arrested appellant in Dallas the day following the killing and at that time he advised appellant that he had the right to remain silent; that he did not have to make any statements; that any statements he made could be used against him in a trial of the offense for which he was charged; that he had the right to an attorney and if he could not afford an attorney, one would be furnished for him; and that he had the right to terminate questioning at any time if he decided to talk to the officers.

The record shows that following the arrest Gunn took appellant before Judge Naylor, a Justice of the Peace in Dallas, where according to the testimony of Gunn Judge Naylor advised appellant of his "constitutional rights." Ranger Gunn testified that appellant then requested a polygraph examination and he was taken to the regional Department of Public Safety headquarters in Waco, where the equipment was located. Gunn stated that after arriving in Waco he again gave appellant essentially the same warning he had given him at the time of the arrest and added that the polygraph examination was voluntary on appellant's part and no one could tell appellant to take it. Gunn also testified that the polygraph operator gave the appellant essentially the same warning that Gunn had given the appellant. On re-cross-examination Ranger Gunn was asked, "Did Sheriff Ernest Brooks warn Bennie

Walker of his constitutional rights?" to which Gunn answered, "Yes, sir." The record disclosed that Ranger Gunn was present at all times while the statement was being taken.

The trial court found that appellant was properly warned of his rights and that he knowingly, willingly and intelligently waived his rights.

■ The statement recites that among the warnings given by Sheriff Brooks, the person to whom the statement was given, was the warning that appellant had the right to have an attorney present to advise him prior to and during any questioning or interrogation by peace officers. We hold that the warnings as to the right to counsel given to appellant were sufficient to satisfy the requirements of Miranda v. Arizona, supra. See McCandless v. State, 425 S.W.2d 636 (Tex.Cr.App.1968); Torres v. State, 422 S.W.2d 741 (Tex.Cr.App.1968). Furthermore, as to the warnings given appellant by Gunn, Judge Onion in McCandless v. State, supra, said:

"While the testimony relative to the right to counsel warning does not reflect the express statement that this meant counsel prior to interrogation, there is certainly no claim that it was limited to mean counsel after he got to court."

Appellant's first ground of error is overruled.

Appellant complains next that there was no showing that he voluntarily, knowingly and intelligently waived his rights against self-incrimination prior to making the statement.

The record contains pictures of the appellant reading and signing the statement. Gunn testified that no threats, violence or promises were made. The statement recites:

"I understand my rights as set out in this warning and knowing what they are I freely and voluntarily, without being forced or compelled by promises, threats

or persuasion, waive these rights and make the following statement . . ."

 While it may not be determinative, such statement in the confession is a factor to be considered in determining if the accused affirmatively stated he desired to relinquish and waive his rights. Easley v. State, 448 S.W.2d 490 (Tex.Cr.App. 1970). The statement further shows that appellant was 38 years old, went to the sixth grade in school, and could read and write the English language. The evidence showed appellant had served a term in the penitentiary for passing a forged instrument and had had other contacts with law enforcement officers.

Appellant's previous experience with law enforcement authorities lends credence to the finding that he intelligently, knowingly and voluntarily waived his rights. Waiver is to be determined from the totality of the circumstances. Pete v. State, 471 S.W.2d 841 (Tex.Cr.App.1971); Thomas v. State, 458 S.W.2d 817 (Tex.Cr. App.1970); Easley v. State, supra.

There is no showing of lengthy interrogation or incommunicado incarceration which would mitigate against a valid finding of waiver. There was no showing that appellant was tricked or cajoled into waiving any of his rights nor was any question raised as to physical or psychological coercion.

We conclude the State has discharged its burden as to an affirmative waiver of the privilege against self-incrimination, and the court did not err in admitting the confession.

In his last ground of error appellant complains of the trial court's sustaining the State's objection to the appellant's questioning of a character witness.

During the punishment phase of the trial the prosecutor objected to the questioning of appellant's character witness Kenneth Harold Thomas on the grounds that the witness had not been asked specific questions as to whether he knew appellant's reputation for being a law-abiding citizen. The trial court sustained the objection. The witness was then asked if he knew appellant's reputation for being a peaceful and law-abiding citizen. Appellant argues that by sustaining the objection the trial court in effect required the appellant to put his reputation in issue, which enabled the prosecution on cross-examination to ask a number of damaging "have you heard" questions regarding specific acts of misconduct which would not have been admissible otherwise. In Childs v. State, 491 S.W.2d 907 (Tex.Cr.App.1973), this court held that a defendant may not have a witness testify about the defendant's good character traits but avoid placing his reputation in evidence simply by not specifically asking the witness whether the defendant enjoyed a good reputation in the community.

Appellant's third ground of error is overruled.

We have considered all grounds of error and all are overruled. The judgment of the trial court is affirmed.

Opinion approved by the Court.