In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00078-CR


______________________________




NOAH DWYER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 85th Judicial District Court


Brazos County, Texas


Trial Court No. 27,564-85




 




Before Morriss, C.J., Ross and Grant,* JJ.


Memorandum Opinion by Justice Ross


*Ben Z. Grant, Justice, Retired, Sitting by Assignment



MEMORANDUM OPINION



 Noah Dwyer appeals his convictions for one count of possession of cocaine in an
amount greater than four grams, but less than 200 grams with intent to deliver and one
count of possession of lysergic acid diethylamide (LSD) in a quantity greater than eighty
abuse units, but less than 4,000 abuse units with intent to deliver. See Tex. Health &
Safety Code Ann. §§ 481.112, 481.1121 (Vernon Supp. 2003). Dwyer pled guilty without
a plea agreement, and the trial court sentenced him to two fifteen-year terms of
imprisonment and ordered him to pay two $1,000.00 fines.

 In the same proceeding, Dwyer pled guilty to the charges in three other indictments: 
(1) possession of marihuana in a quantity greater than four ounces, but less than five
pounds, for which he was sentenced to two years' confinement in a state jail facility and
ordered to pay a $1,000.00 fine; (2) one count of delivery of marihuana in a quantity
greater than one-quarter ounce, but less than five pounds and one count of delivery of LSD
in a quantity of less than twenty abuse units, for which he was sentenced to two two-year
terms of confinement in a state jail facility and ordered to pay two $1,000.00 fines; and (3)
two counts of delivery of cocaine in an amount greater than one gram, but less than four
grams, for which he was sentenced to two fifteen-year terms of imprisonment and ordered
to pay two $1,000.00 fines. The trial court ordered all sentences to run concurrently. 
Dwyer has also filed appeals from those convictions, which we address in separate
opinions.

 Dwyer contends the trial court abused its discretion in sentencing him to
confinement rather than placing him on community supervision. We review a sentence
imposed by the trial court for abuse of discretion. Jackson v. State, 680 S.W.2d 809, 814
(Tex. Crim. App. 1984). As a general rule, a penalty assessed within the proper
punishment range will not be disturbed on appeal. Id.

 Dwyer was convicted of two first degree felonies. Tex. Health & Safety Code
Ann. §§ 481.112(d), 481.1121(b)(3). The punishment range for the offenses is between
five and ninety-nine years' or life imprisonment and a fine not to exceed $10,000.00. Tex.
Pen. Code Ann. § 12.32 (Vernon 1994). Dwyer's punishment of two fifteen-year terms of
imprisonment and two $1,000.00 fines is at the lower end of the statutory range.

 Further, the evidence at Dwyer's trial supports the trial court's decision. Officer
Wayland Rawls testified he first had contact with Dwyer through a confidential informant
while working undercover. Rawls testified Dwyer explained to him how to grow marihuana
plants in his home and discussed going to Dallas to purchase LSD. Rawls purchased
twenty LSD abuse units and some potted marihuana plants from Dwyer at that meeting. 

 Rawls testified that on another occasion he purchased one-eighth ounce of cocaine
from Dwyer. He testified Dwyer told him that he paid his bills by selling drugs, that he
ensured repeat business by selling undiluted cocaine, and that he went to Dallas several
times a week to purchase drugs. Rawls testified that, on the same occasion, he saw
several bags of cocaine in Dwyer's possession. 

 Rawls testified that on another occasion Dwyer agreed to purchase LSD in Dallas
if Rawls paid him in advance. On yet another occasion, a confidential informant purchased
forty-seven abuse units of LSD from Dwyer. 

 Rawls also testified he accompanied Dwyer to Dallas to purchase drugs. He
testified Dwyer sold him 420 abuse units of LSD, having previously agreed to sell him 500,
but having held back eighty units. Dwyer also purchased a pound of marihuana for
himself. Rawls testified that on this trip he saw Dwyer in possession of over four grams of
cocaine in a cigarette box. 

 It was on the way back from Dallas that officers stopped the vehicle, arrested Dwyer,
and seized the LSD, cocaine, and marihuana. Deputy Eddie Ramirez, who transported
Dwyer to jail, testified he found several small bags containing a white, powdery substance,
later identified as cocaine, where Dwyer had been seated in his patrol car. Officer Robert
Wilson testified he took a statement from Dwyer in which he denied the marihuana and
cocaine found in Ramirez' car were his, but admitted he held back eighty abuse units of
LSD from Rawls, whom he still did not know was a police officer.

 Betty Meier, a community supervision officer with the Brazos County Community
Supervision and Corrections Department, testified she prepared a presentence
investigation report on Dwyer. She testified Dwyer admitted selling cocaine, LSD,
methamphetamine, and marihuana since he was fourteen years old. She testified Dwyer
told her he made between $200.00 and $3,000.00 per week selling drugs. She also
testified Dwyer admitted he was in a gang from the time he was thirteen years old until two
years before his arrest. Meier further testified she did not consider Dwyer a good
candidate for admission to a drug rehabilitation program because he only admitted
smoking marihuana and infrequent cocaine use, and did not indicate any desire to change
his behavior. 

 Carolyn Brunson, Dwyer's girlfriend who pled guilty to a drug possession offense
and agreed to testify against him, testified Dwyer would go to Dallas once or twice each
month to purchase LSD. She testified she witnessed Dwyer sell LSD and marihuana to
a minor. She also testified Dwyer essentially lived off selling drugs, and he frequently
smoked marihuana. 

 Dwyer testified he had been selling drugs since he was fourteen years old. He
would do so to offset the cost of his own drug usage. He testified he did not make much
money selling drugs because he did not sell in large quantities. He testified this was the
first time he had dealt in the quantities of drugs for which he was charged in the present
case. He testified he had been addicted to marihuana, but was not addicted any longer. 
He testified he lied to Meier when he told her he did not use LSD and when he did not
disclose to her he had been selling drugs since he was fourteen. 

 Dwyer contends the trial court never considered his application for community
supervision and that he had no prior criminal convictions. But the trial court detailed
specifically the factors it considered in sentencing him. Those factors included the
sentencing range for the offense, protection of society, protection of any possible victims,
deterrence, and rehabilitation. As factors in mitigation, the trial court considered there were
no allegations that Dwyer used violence or a weapon in connection with the offenses and
that Dwyer pled guilty. The trial court also expressed concern about the amount of drugs
involved and the length of time Dwyer had been selling drugs. 

 The trial court then made the following statement, "And then I make a decision
whether or not to do the probation." The trial court told Dwyer it was not going to place him
on community supervision because it could not trust his sincerity, in view of the fact he lied
to police and community supervision officers after his arrest. 

 While the trial court did not specifically mention the fact Dwyer had never been
convicted of a crime, it was certainly aware of this fact because Dwyer's attorney
mentioned it in his opening and closing arguments. Given the record before us, we
conclude the trial court did not abuse its discretion in assessing Dwyer's punishment.

 We affirm the trial court's judgment.



 Donald R. Ross

 Justice


Date Submitted: September 13, 2002

Date Decided: February 6, 2003


Do Not Publish



waived. Mullane v. State, 475 S.W.2d 924, 926 (Tex. Crim. App. 1971). (3) 
A defendant who chooses to testify at trial waives his privilege against compulsory self-incrimination
with respect to the testimony he gives. Bryan, 837 S.W.2d at 643.

 In the present case, Rosales contends that since he failed to understand the privilege against
self-incrimination, he could not have waived that privilege. Taking into account the totality of the
circumstances, we cannot agree with this contention. First, we note that Rosales was provided with
an interpreter, substantially minimizing the possibility that a language barrier would be the genesis
of any misunderstanding on Rosales's part concerning the rights which were guaranteed to him. (4) 
Second, Rosales clearly acknowledged his understanding that he could not be compelled to testify,
either by his own attorney or by the trial court. 

 The only issue about which Rosales displayed some degree of hesitancy was that of whether
the State could call him to testify. However, because the State made no attempt to call Rosales to
testify, Rosales's hesitancy in response to this particular inquiry is not outcome determinative. The
fact is, Rosales was called to testify by his own attorney; upon taking the stand, Rosales stated that
he understood that he did not have to testify and that his own attorney could not compel him to
testify. Further, Rosales affirmed on two occasions his desire to testify, thereby choosing to waive
his privilege to remain silent. Finally, in light of the fact that Rosales was represented by counsel,
we must presume that Rosales's decision to testify was undertaken voluntarily and with full
knowledge of his rights. Mullane, 475 S.W.2d at 926.

 Walker v. State, 501 S.W.2d 912 (Tex. Crim. App. 1973), teaches that personal experience
is an additional factor to be considered in determining whether, under the totality of the
circumstances, the waiver of the right against self-incrimination is voluntarily and intelligently
undertaken. (5) Id. at 915. Here, Rosales's stay in the United States in excess of two decades, his
understanding of the English language, the provision of an interpreter for him to guard against a
language barrier, and his prior experience with the criminal justice system are all circumstances
which militate in favor of Rosales having made a voluntary, knowing, and intelligent decision to
testify. These circumstances, coupled with Rosales's representation by counsel and Rosales's
expressed understanding that he could not be compelled to testify, point to the conclusion that
Rosales knowingly, voluntarily, and intelligently waived his privilege against self-incrimination. 
We overrule this point of error.

Indirect Reference to Rosales's Post-Arrest Silence Is Not Preserved

 As a component of the primary contention that his privilege against self-incrimination was
violated, Rosales further complains that the State made improper reference to his post-arrest silence. 
The objectionable statement was elicited in conjunction with the State's questioning of Andy
Chester, chief investigator for the Hopkins County Sheriff's Department, regarding the protocol used
by the sheriff's department in the investigation of sexual offenses. The relevant exchange is as
follows:

 Q [BY THE STATE] Okay. After the Defendant was arrested, were any
efforts made to contact you and talk to you by the Defendant -- 

 

 A [BY CHESTER] No, sir.

 

 Q -- about this offense at all, either of these?

 

 A None.

 

 Q Is there a mechanism and a process in the jail whereby he could
contact you if he chose to?


 A They could forward a message to the jail administrator to forward to
one of the investigators. It happens all the time.

 

 [BY DEFENSE COUNSEL]: Excuse me just a minute. 

 Judge, I object to the question here on the grounds that, somewhere after he
was under arrest, he attempts to bring out before the jury the fact that he remained
silent. The exercise of a constitutional right is no evidence of guilt. It cannot be.

 

 . . . .


 THE COURT: Well, at this time, I'll sustain the objection to that
question. 

 

 [BY DEFENSE COUNSEL]: Would you instruct the jury not to
consider the last response?

 

 THE COURT: Ladies and gentlemen, don't consider the response
from the witness for any purpose whatsoever.


 It should be noted here that Rosales received all of the relief he requested from the trial court. 
When Rosales objected, the objection was sustained. When Rosales asked for the jury to be
instructed to disregard the statement, the instruction was readily provided by the trial court. Rosales
was never met with an adverse ruling.

 To preserve error for appellate review, a party must make a timely and
specific objection or motion at trial, and there must be an adverse ruling by the trial
court. Failure to preserve error at trial forfeits the later assertion of that error on
appeal. In fact, almost all error -- even constitutional error -- may be forfeited if the
appellant failed to object. We have consistently held that the failure to object in a
timely and specific manner during trial forfeits complaints about the admissibility of
evidence. This is true even though the error may concern a constitutional right of the
defendant. 


Fuller v. State, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008) (footnotes omitted). 

 If the objected-to comments were an improper comment on Rosales's post-arrest silence
which were prohibited by the Fifth Amendment to the United States Constitution, any right to raise
an objection on appeal has been forfeited by a failure to preserve error. Tex. R. App. P. 33.1(a). We
overrule this point of error. 

The Evidence Is Factually Sufficient to Support the Verdict

 Rosales does not complain of the legal sufficiency of the evidence, but does assert that the
evidence is factually insufficient. A factual sufficiency review begins with the presumption that the
evidence supporting the jury's verdict is legally sufficient. Jones v. State, 944 S.W.2d 642, 647
(Tex. Crim. App. 1996). We view all evidence in a neutral light when conducting a factual
sufficiency review. Neal v. State, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), cert. denied, 129
S.Ct. 1037 (2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We must
determine if the evidence in support of the verdict is so weak that the verdict is clearly wrong and
manifestly unjust or whether the verdict is against the great weight and preponderance of the
conflicting evidence. Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); Watson, 204
S.W.3d at 414-15; Drichas v. State, 219 S.W.3d 471, 473 (Tex. App.--Texarkana 2007, pet. ref'd). 
We are mindful of the fact that a jury has already heard the evidence and convicted based on that
evidence. While a factual sufficiency review allows a very limited degree of "second-guessing" the
jury, the review should be deferential, with a high level of skepticism about the jury's verdict before
a reversal can occur. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Watson, 204
S.W.3d at 417.

 Our analysis of whether the evidence is factually sufficient is measured against the elements
of the offense with the same kind of analysis as that applied in the test for a hypothetically-correct
jury charge. (6) Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); see also Grotti v. State,
273 S.W.3d 273, 280 (Tex. Crim. App. 2008). The hypothetically-correct jury charge "sets out the
law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or
unnecessarily restrict the State's theories of liability, and adequately describes the particular offense
for which the defendant was tried." Malik, 953 S.W.2d at 240. 

 Under a hypothetically-correct charge in this case, the jury was required to find, beyond a
reasonable doubt, that Rosales engaged in sexual contact with A.B. when A.B. was younger than
seventeen years of age. Tex. Penal Code Ann. § 21.11(a)(1) (Vernon Supp. 2009). In showing that
Rosales had engaged in sexual contact with A.B., it was necessary for the State to show that he had
touched the anus, breast, or any part of the genitals of A.B. (even through clothing) with the intent
to arouse or gratify either his own sexual desire or that of A.B. Tex. Penal Code Ann. § 21.11(c)
(Vernon Supp. 2009).

 The record before us reveals that A.B. moved in with her grandmother, who obtained legal
custody of A.B. and her three siblings, when A.B. was quite young (four to five years old). When
A.B. was a pre-teen, she began to visit her mother on occasional weekends. Rosales married A.B.'s
mother when A.B. was in elementary school, and he was present when A.B. visited her mother. On
one particular visit, the family was traveling together in Rosales's truck. Rosales was seated next
to the passenger door, with A.B. sitting next to him. A.B.'s mother was driving, with A.B.'s two
younger brothers sitting between A.B. and her mother. C.B., A.B.'s older sister, was sitting on
A.B.'s lap. While seated in this configuration, Rosales stuck his hand inside A.B.'s shorts in the
back and also put his hand on top of her shorts in the front. A.B., who was then between the ages
of ten and twelve at the time of the incident (an adult at the time of trial) squeezed and pulled away. 
A.B. did not report this incident to anyone until several years later, when her sister, C.B., made a
complaint that Rosales had attempted to rape her. 

 Although A.B. continued to visit her mother after this incident, she was frightened that a
similar incident might occur, so she tried to avoid Rosales by staying awake until she was sure
Rosales was sleeping. A.B. testified that on one occasion, she was very tired and went to bed before
her mother and siblings retired for the evening. On that occasion, A.B. was awakened by Rosales,
who was pulling on the bed covers and sticking his hand under the covers on top of her. When A.B.
began to yell in protest, Rosales eventually left. (7) A.B. testified that Rosales did not attempt to molest
her again after this second attempt. 

 Rosales contends the evidence is factually insufficient to support the verdict because C.B.,
who was sitting on A.B.'s lap during the first of such incidents, testified that she did not see any
inappropriate action by Rosales toward A.B. Rosales claims that such evidence, coming from
another alleged victim, is too weak to support a finding of guilt beyond a reasonable doubt.

 The testimony of C.B. on this issue is quite brief:

 Q [BY DEFENSE COUNSEL] All right. You never saw them when
you was [sic] riding down the road in her lap in a pickup?

 

 A [BY C.B.] No.

 

 Q So, you have no information one way or the other about that?

 

 A If so, I don't remember.

 

 Q You don't remember? Well, it would be something you'd remember,
wouldn't it? If he acted improperly, sexually improperly, toward your sister, you'd
remember that, wouldn't you?


 A I don't know. I have [sic] bad memory. Certain things I remember,
and certain things I don't. 


 This testimony is not a refutation of the testimony from A.B., the victim of the crime. Rather,
it merely establishes that C.B. either did not see the incident described by A.B. or had no memory
of it. The inquiry of C.B. regarding this issue was limited to what C.B. actually saw. At the time
of the incident, since C.B. was sitting on A.B.'s lap, she would not have been likely to see the
incident unless she turned around to look. Given the fact that there were six people (four of whom
were children) crowded onto a single bench seat of a truck at the time of the incident, the fact that
C.B. did not see the incident take place is not surprising and does not discredit the testimony given
by A.B. on this issue. Although C.B. testified that she did not see the touching of which A.B.
complained, C.B. did not offer any testimony that the incident about which A.B. testified did not
occur. Because C.B.'s testimony neither confirms nor refutes A.B.'s testimony on this issue, it
cannot amount to such "great weight and preponderance of the evidence" such that the verdict of the
jury is "clearly wrong or manifestly unjust." Lancon, 253 S.W.3d at 705. We will not second-guess
the jury on its determination, as great deference is to be accorded the verdict. Roberts, 220 S.W.3d
at 524. This point of error is overruled.

 For the reasons stated herein, we affirm the judgment of the trial court.




 Bailey C. Moseley

 Justice


Date Submitted: November 24, 2009

Date Decided: December 11, 2009


Do Not Publish


1. The appeal of Rosales's conviction for attempted sexual assault is the subject of a separate
opinion by this Court, issued of even date herewith.
2. It is apparent that Rosales is not entirely fluent in the English language and was assisted by
an interpreter at trial. Even so, the record reveals that Rosales is able to understand the English
language.
3. In Mullane, the defendant testified at trial and confessed his guilt; on appeal, Mullane
claimed his right against self-incrimination was violated because of claimed ineffective assistance
of counsel. Mullane, 475 S.W.2d at 925-26. The Texas Court of Criminal Appeals held that where
"a defendant, represented by counsel, testifies in his own behalf, we will presume this act to be
undertaken voluntarily and with full knowledge of his rights." Id. at 926. 
4. Rosales was not a newcomer to the United States; at the time of trial, he had lived here for
over twenty years, and he was able to understand the English language. Likewise, Rosales had prior
experience with the criminal justice system as a result of two prior driving while intoxicated
convictions. 
5. In Walker, the defendant signed a statement which indicated he was thirty-eight years old,
had completed the sixth grade, understood the English language, and had been incarcerated on a
previous conviction. Walker, 501 S.W.2d at 915. The court found that the defendant was capable
of waiving his right to remain silent in light of the totality of these circumstances. Id.
6. Malik controls "even in the absence of alleged jury charge error." Gollihar v. State, 46
S.W.3d 243, 255 (Tex. Crim. App. 2001). 
7. Testimony regarding this second incident was admitted without objection, even though it
was not the subject of the indictment.