

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-08-00222-CR

_____

QUINCY LAJAMES NELSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 08F0535-202

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Quincy LaJames Nelson was convicted by a Bowie County jury of aggravated robbery with a deadly weapon[1] and sentenced to forty years' imprisonment in the Texas Department of Criminal Justice–Institutional Division. Nelson appeals, claiming the trial court erred in submitting certain photographs to the jury and further claiming that he did not voluntarily waive his rights before submitting to a custodial interrogation (a recording of which was shown to the jury). We affirm the judgment.

I.     BACKGROUND AND PROCEDURAL HISTORY

On September 11, 2007, Nelson, armed with a pistol, entered Shelby's Exxon station with a friend,[2] with robbery on their minds. The two entered the station through the garage bay doors and proceeded to the office in the station's garage bay area. Having encountered no one at this point, Nelson sat down at the desk and waited for a victim to appear. The long-time garage manager, Billy Philyaw, entered the station through the front door and was told by another employee that there were some people in the back that he thought might need an inspection sticker for an automobile. Philyaw walked out to the office in the garage bay area, where he encountered Nelson, who was seated in a chair in the office with his back to Philyaw. Philyaw asked Nelson if he needed an inspection. At that point, Nelson pulled a black stocking mask over his face, grabbed Philyaw with one hand, and

_____

[1]TEX. PENAL CODE ANN. § 29.03 (Vernon 2003).

[2]The friend was previously tried and convicted for her role in the aggravated robbery.

2

pointed the gun at him. Nelson pushed Philyaw into a dark corner, demanded money, and threatened to shoot Philyaw should Philyaw not comply with the demand. When Philyaw replied that he did not have any money, Nelson hit him in the face with a blow that caused Philyaw to later require surgery for repair of a blowout fracture.[3] After having struck Philyaw, Nelson and his friend fled the scene, whereupon Philyaw contacted the police. Shortly thereafter, Nelson and his friend were apprehended and taken to jail.

Kimberly Weaver, a detective with the Texarkana, Texas, Police Department, was assigned the investigation of the Shelby Exxon robbery. Weaver, after advising Nelson of his rights pursuant to Article 38.22, Section 2(a) of the Texas Code of Criminal Procedure, conducted a video recorded custodial interrogation of him on the day of the robbery. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a) (Vernon 2005).

At trial, Nelson objected to the introduction of the video recording of the custodial interrogation. He did not challenge the fact that Weaver had advised him of his rights but, rather, maintained that he did not understand his rights and, therefore, could not have waived those rights. After having conducted a hearing outside the presence of the jury on the issue of the admissibility of the recorded interview, the trial court dictated its findings of fact and conclusions of law into the record, as follows: (1) Weaver advised Nelson of his rights and Nelson acknowledged that he understood each of those rights; (2) thereafter, when Nelson was requested to sign a written waiver

---

[3]Referring to an orbital floor fracture. *See* http://emedicine.medscape.com/.

3

of his rights, he hesitated, indicating that he might not understand each of his rights; (3) Weaver and another officer who was present at the interrogation asked Nelson repeatedly what he failed to comprehend, and repeated some of the waivers he was requested to make; (4) Nelson then appeared to move his head in a consensual gesture and thereafter initialed each waiver of his rights that was provided to him and signed the document, "Q. Nelson"; (5) Nelson understood his rights; and (6) Nelson gave no indication at the time that he signed the waiver that he did not understand that he was waiving the rights which had been explained to him.

During her investigation of the incident, Weaver took a photograph that depicted the injury to Philyaw's eye and a photograph of Philyaw on the date of the robbery depicting Philyaw lying down being oxygenated. These exhibits were admitted into evidence over Nelson's objection pursuant to Rule 403 of the Texas Rules of Evidence.

## II.    ISSUES PRESENTED

On appeal, Nelson urges two points of error: (1) he maintains that the trial court committed error by permitting the two photographs into evidence; and (2) he complains that the trial court erred in its finding that Nelson understood his rights and that he knowingly, intelligently, and voluntarily waived those rights when he consented to the interview in which he inculpated himself in the crime.

4

## III. ANALYSIS OF POINTS OF ERROR

### A. The Photographs

Nelson asserts that the trial court erred in admitting two, specific photographs into evidence on the basis that the probative value of these photographs was substantially outweighed by the danger of unfair prejudice.[4] The admissibility of a photograph is within the sound discretion of the trial court. *Paredes v. State*, 129 S.W.3d 530, 539 (Tex. Crim. App. 2004). So long as the trial court's ruling on the admission of evidence lies within the zone of reasonable disagreement, its ruling will not be reversed. *Montgomery v. State*, 810 S.W.2d 372, 391–92 (Tex. Crim. App. 1990) (op. on reh'g); *see Mitchell v. State*, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996) (plurality opinion).

Rule 403 of the Texas Rules of Evidence governs the admissibility of the allegedly inflammatory photographs. Rule 403 provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

TEX. R. EVID. 403. Factors to be considered in determining whether the probative value of the photographs is substantially outweighed by the danger of unfair prejudice to Nelson include:

> the number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether they are close-up . . . [and] the availability of other means of proof and the circumstances unique to each individual case.

*Long v. State*, 823 S.W.2d 259, 272 (Tex. Crim. App. 1991).

---

[4]TEX. R. EVID. 403.

Both photographs are color, 4" x 6" depictions of Philyaw's face. The first photograph depicts a purple bruised area around Philyaw's right eye. The second photograph depicts Philyaw resting with closed eyes with an oxygen tube having been placed in his nose. Both photographs are taken from a close view point. While the photographs are certainly prejudicial to Nelson, they do nothing more than depict Philyaw's condition after he was struck by Nelson; while graphic, they are not gruesome in any respect. "'[U]nfair prejudice' refers to 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily an emotional one.'" *Erazo v. State*, 144 S.W.3d 487, 501–02 (Tex. Crim. App. 2004) (quoting *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999)). All testimony and evidence will be prejudicial to one party or the other. *See Joiner v. State*, 825 S.W.2d 701, 708 (Tex. Crim. App. 1992). It is only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value that Rule 403 is applicable. *Jones v. State*, 944 S.W.2d 642, 653 (Tex. Crim. App. 1996). We find no such disparity here.

Moreover, a photograph is generally admissible if verbal testimony about the matters depicted in the photograph is also admissible. *Paredes*, 129 S.W.3d at 539. Here, there was testimony that when Philyaw indicated he did not have any money, Nelson struck him in the face.[5] We conclude that the photographs at issue presented no danger of unfair prejudice that substantially

---

[5]This testimony was not met with any objection and was relevant (even though assault with bodily injury was not an element of this offense) because it imparted to the jury information essential to understanding the context and circumstances of events which legally are blended and interwoven. *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993).

outweighed their probative value.  The trial court did not abuse its discretion in admitting the photographs.

**B.**     **The Custodial Interrogation**

Nelson was advised of his rights pursuant to Article 38.22, Section 2(a) of the Texas Code of Criminal Procedure, but contends that because he failed to fully comprehend or understand those rights, they could not have been waived.  Therefore, he maintains that the trial court erred in permitting evidence of the interrogation to be introduced.

The trial court conducted a hearing outside the presence of the jury on the motion to suppress evidence of the videotaped interrogation of Nelson.  The hearing included the voir dire of Weaver as well as a viewing of the disputed video recording by the trial court.  The court then dictated its findings of fact and conclusions of law into the record (summarized above), as required by Article 38.22, Section 6 of the Texas Code of Criminal Procedure.

At a hearing on the voluntariness of a confession, the trial court is the sole and exclusive trier of fact and judge of the credibility of the witnesses as well as the weight to be given their testimony. *Green v. State*, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996); *Gentry v. State*, 770 S.W.2d 780, 790 (Tex. Crim. App. 1988).  As such, an appellate court is not at liberty to disturb any finding which is supported by the record.  *Green*, 934 S.W.2d at 98.  Mixed questions of law and fact are also reviewed for an abuse of discretion, if those questions turn on an evaluation of witness credibility

7

and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review de novo mixed questions of law and fact not falling within this category. *Id.*

Here, there is no indication in the record that the trial court, in its discretion as finder of fact, disbelieved Weaver's testimony regarding the interrogation and whether Nelson understood the rights he was waiving. In fact, Weaver's testimony concerning the waiver of these rights was not disputed. Further, there is no question raised as to the accuracy or reliability of the video recording depicting Weaver's interrogation. Because the facts surrounding the interrogation are not in dispute, the matter at issue is a question of law, i.e., whether Nelson's statement is admissible under Article 38.22, Section 3(a)(2).[6] We, therefore, apply a de novo review.

---

[6]Article 38.22, Section 3(a)(2) of the Texas Code of Criminal Procedure requires that any oral statement resulting from custodial interrogation must contain a warning informing the accused of his rights under Article 38.22, Section 2, and the accused must knowingly, intelligently, and voluntarily waive those rights. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(2) (Vernon 2005). Article 38.22, Section 2 of the Texas Code of Criminal Procedure provides that notice of the following rights must be provided to the accused prior to making a statement:

> (1)    he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

> (2)    any statement he makes may be used as evidence against him in court;

> (3)    he has the right to have a lawyer present to advise him prior to and during any questioning;

Article 38.21 of the Texas Code of Criminal Procedure provides that the statement of a person accused of a crime "may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter provided." TEX. CODE CRIM. PROC. ANN. art. 38.21 (Vernon 2005). It is well established that the voluntariness of such statements is to be evaluated under the "totality of the circumstances" standard. *See Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007) (recognizing totality of circumstances to be correct standard by which to evaluate voluntariness of confession given by an adult); *Creager v. State*, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997) ("[v]oluntariness is decided by considering the totality of the circumstances under which the statement was obtained").

The video recording of Nelson's interrogation began at 6:05 p.m. Prior to any interrogation, Weaver read Nelson the rights required by Article 38.22. After first indicating he might not understand the rights read to him, questions were asked by the officers with respect to what Nelson did not understand, and certain of the rights were read again and explained to Nelson. Nelson then appeared to indicate an understanding of those rights by nodding his head in the affirmative, and then proceeded to place his initials next to waivers of each of the five enumerated rights set forth in Article 38.22. Nelson also placed his initials next to the statement that: "You knowingly,

(4)     if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5)     he has the right to terminate the interview at any time.

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2 (Vernon 2005).

9

intelligently, and voluntarily waive any rights set out in this warning." Nelson then signed the "Warning of Rights" as witnessed by Weaver. Nelson does not claim that he was coerced, intimidated, tricked, or in any way forced into giving his statement.[7] In fact, Weaver made it very clear that Nelson could remain silent and that he could terminate the interview. Nelson simply claims that because he did not understand his rights, the trial court erred in showing the video recording to the jury and in permitting reference to the recording and to any statements Nelson made while being recorded. We disagree.

Here, Nelson placed his initials "QN" next to each, separately numbered and enumerated right he was given. Nelson's signed "Warning of Rights" indicates that he "knowingly, intelligently, and voluntarily" waived those rights. No one alleged that Nelson is unable to read and understand the English language; contrarily, the record contains a video recording of Nelson reading and signing the "Warning of Rights." Nelson neither claims—nor is there evidence in the record—of any diminished capacity on his part. Further, there is no showing of lengthy interrogation or incommunicado incarceration which would mitigate against a finding of waiver. All of these factors are properly considered in viewing the totality of the circumstances. *Walker v. State*, 501 S.W.2d 912 (Tex. Crim. App. 1973); *Richardson v. State*, 632 S.W.2d 700, 703–04 (Tex. App.—Fort Worth 1982, no pet.).

---

[7]Although Nelson did not confess to the robbery, he changed his account of events more than once. This was used against Nelson when Weaver testified that it is common for individuals suspected of crimes to change their story.

We conclude that when one considers the totality of the circumstances, a momentary question of whether Nelson fully understood was adequately addressed at the time it was posed. Therefore, we determine that Nelson did "knowingly, intelligently, and voluntarily" waive his rights under Article 38.22 of the Texas Code of Criminal Procedure. The State discharged its burden as to an affirmative waiver of the privilege against self-incrimination, and the court did not err in admitting the video recording of Nelson's statement.

## IV. CONCLUSION

Because we conclude the trial court did not err in admitting certain photographs into evidence depicting Philyaw's injuries, and further did not err in admitting Nelson's video recorded statement into evidence, we affirm the judgment of the trial court.


Bailey C. Moseley
Justice

Date Submitted:     October 14, 2009
Date Decided:       November 10, 2009

Do Not Publish

11