

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00120-CR

_____

SANTIAGO TELLEZ ROSALES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 8th Judicial District Court
Hopkins County, Texas
Trial Court No. 0417619

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

The case under consideration is the appeal of Santiago Tellez Rosales on his conviction by a jury for indecency by sexual contact with a child, A.B., wherein he was assessed a punishment of eight years' imprisonment and fined $3,000.00. The case was tried in a single trial with a charge against Rosales for the attempted rape of A.B.'s adult sister, C.B.[1]

On appeal, Rosales contends that he did not understand his right to remain silent and to not testify, he maintains that impermissible testimony was admitted regarding his post-arrest silence, and he complains that the evidence is factually insufficient to support the verdict. We affirm the judgment of the trial court because (1) Rosales knowingly waived his privilege against self-incrimination, (2) the indirect reference at trial to Rosales's post-arrest silence does not amount to reversible error, and (3) the evidence is factually sufficient to support the verdict.

*Rosales Waived His Privilege Against Self-Incrimination*

In a very brief argument, Rosales points out that he testified in his own behalf, and directs us to testimony which purportedly illustrates his contention that he failed to understand his right to remain silent and not testify.[2] The State objected repeatedly when counsel attempted to elicit testimony from Rosales regarding his understanding of the right not to testify.

---

[1]The appeal of Rosales's conviction for attempted sexual assault is the subject of a separate opinion by this Court, issued of even date herewith.

[2]It is apparent that Rosales is not entirely fluent in the English language and was assisted by an interpreter at trial. Even so, the record reveals that Rosales is able to understand the English language.

2

The testimony relevant to this is this:

Q      [BY DEFENSE COUNSEL] Mr. Rosales, you've been called here as a witness today -- or, Santiago, you've been called as a witness today. You understand you don't have to testify?

A      [BY ROSALES] Yes.

Q      You understand that the 12 people on this jury would be duty-bound not to consider it if you didn't testify?

[THE STATE]: Your Honor, I'm going to object to the leading nature of the question. He's not doing an introduction anymore; he's doing factual questions.

THE COURT: Okay; sustained.

Q      . . . What is your belief as to whether or not these 12 people on the jury could consider it against you if you didn't testify?

A      To me, it seems like they need to know, and they need to hear what I have to say about what happened.

Q      All right. But if you didn't testify, what is your belief as to whether or not they could consider it?

A      I think they need to hear me.

Q      I'm sorry?

THE INTERPRETER: I think they need to hear me.

Q      . . . All right. Do you understand that I can't call you as a witness?

A      Yes.

Q      You understand the State can't call you as a witness?

[THE STATE]: Your Honor, I object to the leading nature of the question.

THE COURT: Sustain.

Q . . . State whether or not you understand the State can't call you as a witness.

[THE STATE]: It's the same question, Your Honor.

THE COURT: Sustain.

Q . . . What is your belief as to whether or not the State can call you as a witness?

(Discussion between Interpreter and Witness)

[THE STATE]: Your Honor, --

A . . . I do not know. I do not understand.

. . . .

Q . . . What is your belief as to whether or not the judge can call you as a witness?

A I don't believe he can call me as a witness.

A defendant is vested with a Constitutional privilege against self-incrimination. U.S. CONST. amend. V; TEX. CONST. art. I, § 10. It is thus fundamental that the State may neither call the defendant as a witness, nor may the defendant be compelled to testify at trial and give evidence against himself. *Bryan v. State*, 837 S.W.2d 637, 643 (Tex. Crim. App. 1992). Although a defendant may elect to testify in his own behalf, the fact of his failure to do so may not be used

4

against him.  Moreover, a defendant's decision not to testify may not be alluded to or commented upon at trial.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.08 (Vernon 2005).

Conversely, the privilege against self-incrimination may be waived so long as that waiver is knowingly, voluntarily, and intelligently made.  *Bryan*, 837 S.W.2d at 643.  The question of whether an effective waiver has taken place is to be determined from the totality of the circumstances.  *Castro v. State*, 562 S.W.2d 252, 258 (Tex. Crim. App. 1978); *Walker v. State*, 501 S.W.2d 912, 915 (Tex. Crim. App. 1973).  One of the circumstances to be considered is whether the defendant is represented by counsel.  When a defendant is represented by counsel and testifies on his own behalf, it is presumed that the act of testifying was undertaken voluntarily and with full knowledge of the rights which are being waived.  *Mullane v. State*, 475 S.W.2d 924, 926 (Tex. Crim. App. 1971).[3] A defendant who chooses to testify at trial waives his privilege against compulsory self-incrimination with respect to the testimony he gives.  *Bryan*, 837 S.W.2d at 643.

In the present case, Rosales contends that since he failed to understand the privilege against self-incrimination, he could not have waived that privilege.  Taking into account the totality of the circumstances, we cannot agree with this contention.  First, we note that Rosales was provided with an interpreter, substantially minimizing the possibility that a language barrier would be the genesis

---

[3]In *Mullane*, the defendant testified at trial and confessed his guilt; on appeal, Mullane claimed his right against self-incrimination was violated because of claimed ineffective assistance of counsel.  *Mullane*, 475 S.W.2d at 925–26.  The Texas Court of Criminal Appeals held that where "a defendant, represented by counsel, testifies in his own behalf, we will presume this act to be undertaken voluntarily and with full knowledge of his rights."  *Id.* at 926.

of any misunderstanding on Rosales's part concerning the rights which were guaranteed to him.[4]

Second, Rosales clearly acknowledged his understanding that he could not be compelled to testify, either by his own attorney or by the trial court.

The only issue about which Rosales displayed some degree of hesitancy was that of whether the State could call him to testify. However, because the State made no attempt to call Rosales to testify, Rosales's hesitancy in response to this particular inquiry is not outcome determinative. The fact is, Rosales was called to testify by his own attorney; upon taking the stand, Rosales stated that he understood that he did not have to testify and that his own attorney could not compel him to testify. Further, Rosales affirmed on two occasions his desire to testify, thereby choosing to waive his privilege to remain silent. Finally, in light of the fact that Rosales was represented by counsel, we must presume that Rosales's decision to testify was undertaken voluntarily and with full knowledge of his rights. *Mullane*, 475 S.W.2d at 926.

*Walker v. State*, 501 S.W.2d 912 (Tex. Crim. App. 1973), teaches that personal experience is an additional factor to be considered in determining whether, under the totality of the circumstances, the waiver of the right against self-incrimination is voluntarily and intelligently

---

[4]Rosales was not a newcomer to the United States; at the time of trial, he had lived here for over twenty years, and he was able to understand the English language. Likewise, Rosales had prior experience with the criminal justice system as a result of two prior driving while intoxicated convictions.

undertaken.[5]  *Id*. at 915.  Here, Rosales's stay in the United States in excess of two decades, his understanding of the English language, the provision of an interpreter for him to guard against a language barrier, and his prior experience with the criminal justice system are all circumstances which militate in favor of Rosales having made a voluntary, knowing, and intelligent decision to testify.  These circumstances, coupled with Rosales's representation by counsel and Rosales's expressed understanding that he could not be compelled to testify, point to the conclusion that Rosales knowingly, voluntarily, and intelligently waived his privilege against self-incrimination. We overrule this point of error.

*Indirect Reference to Rosales's Post-Arrest Silence Is Not Preserved*

As a component of the primary contention that his privilege against self-incrimination was violated, Rosales further complains that the State made improper reference to his post-arrest silence. The objectionable statement was elicited in conjunction with the State's questioning of Andy Chester, chief investigator for the Hopkins County Sheriff's Department, regarding the protocol used by the sheriff's department in the investigation of sexual offenses.  The relevant exchange is as follows:

---

[5]In *Walker*, the defendant signed a statement which indicated he was thirty-eight years old, had completed the sixth grade, understood the English language, and had been incarcerated on a previous conviction.  *Walker*, 501 S.W.2d at 915.  The court found that the defendant was capable of waiving his right to remain silent in light of the totality of these circumstances.  *Id.*

7

Q     [BY THE STATE] Okay. After the Defendant was arrested, were any efforts made to contact you and talk to you by the Defendant --

A     [BY CHESTER]  No, sir.

Q     -- about this offense at all, either of these?

A     None.

Q     Is there a mechanism and a process in the jail whereby he could contact you if he chose to?

A     They could forward a message to the jail administrator to forward to one of the investigators.  It happens all the time.

[BY DEFENSE COUNSEL]:  Excuse me just a minute.
Judge, I object to the question here on the grounds that, somewhere after he was under arrest, he attempts to bring out before the jury the fact that he remained silent.  The exercise of a constitutional right is no evidence of guilt.  It cannot be.

. . . .

THE COURT:  Well, at this time, I'll sustain the objection to that question.

[BY DEFENSE COUNSEL]:  Would you instruct the jury not to consider the last response?

THE COURT:  Ladies and gentlemen, don't consider the response from the witness for any purpose whatsoever.

It should be noted here that Rosales received all of the relief he requested from the trial court. When Rosales objected, the objection was sustained.  When Rosales asked for the jury to be instructed to disregard the statement, the instruction was readily provided by the trial court.  Rosales was never met with an adverse ruling.

8

> To preserve error for appellate review, a party must make a timely and specific objection or motion at trial, and there must be an adverse ruling by the trial court. Failure to preserve error at trial forfeits the later assertion of that error on appeal. In fact, almost all error -- even constitutional error -- may be forfeited if the appellant failed to object. We have consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence. This is true even though the error may concern a constitutional right of the defendant.

*Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008) (footnotes omitted).

If the objected-to comments were an improper comment on Rosales's post-arrest silence which were prohibited by the Fifth Amendment to the United States Constitution, any right to raise an objection on appeal has been forfeited by a failure to preserve error. TEX. R. APP. P. 33.1(a). We overrule this point of error.

*The Evidence Is Factually Sufficient to Support the Verdict*

Rosales does not complain of the legal sufficiency of the evidence, but does assert that the evidence is factually insufficient. A factual sufficiency review begins with the presumption that the evidence supporting the jury's verdict is legally sufficient. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). We view all evidence in a neutral light when conducting a factual sufficiency review. *Neal v. State*, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S.Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We must determine if the evidence in support of the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Watson*, 204

9

S.W.3d at 414–15; *Drichas v. State*, 219 S.W.3d 471, 473 (Tex. App.—Texarkana 2007, pet. ref'd). We are mindful of the fact that a jury has already heard the evidence and convicted based on that evidence. While a factual sufficiency review allows a very limited degree of "second-guessing" the jury, the review should be deferential, with a high level of skepticism about the jury's verdict before a reversal can occur. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Watson*, 204 S.W.3d at 417.

Our analysis of whether the evidence is factually sufficient is measured against the elements of the offense with the same kind of analysis as that applied in the test for a hypothetically-correct jury charge.[6] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008). The hypothetically-correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

Under a hypothetically-correct charge in this case, the jury was required to find, beyond a reasonable doubt, that Rosales engaged in sexual contact with A.B. when A.B. was younger than seventeen years of age. TEX. PENAL CODE ANN. § 21.11(a)(1) (Vernon Supp. 2009). In showing that Rosales had engaged in sexual contact with A.B., it was necessary for the State to show that he had touched the anus, breast, or any part of the genitals of A.B. (even through clothing) with the intent

---

[6]*Malik* controls "*even in the absence of alleged jury charge error.*" *Gollihar v. State*, 46 S.W.3d 243, 255 (Tex. Crim. App. 2001).

to arouse or gratify either his own sexual desire or that of A.B. TEX. PENAL CODE ANN. § 21.11(c) (Vernon Supp. 2009).

The record before us reveals that A.B. moved in with her grandmother, who obtained legal custody of A.B. and her three siblings, when A.B. was quite young (four to five years old). When A.B. was a pre-teen, she began to visit her mother on occasional weekends. Rosales married A.B.'s mother when A.B. was in elementary school, and he was present when A.B. visited her mother. On one particular visit, the family was traveling together in Rosales's truck. Rosales was seated next to the passenger door, with A.B. sitting next to him. A.B.'s mother was driving, with A.B.'s two younger brothers sitting between A.B. and her mother. C.B., A.B.'s older sister, was sitting on A.B.'s lap. While seated in this configuration, Rosales stuck his hand inside A.B.'s shorts in the back and also put his hand on top of her shorts in the front. A.B., who was then between the ages of ten and twelve at the time of the incident (an adult at the time of trial) squeezed and pulled away. A.B. did not report this incident to anyone until several years later, when her sister, C.B., made a complaint that Rosales had attempted to rape her.

Although A.B. continued to visit her mother after this incident, she was frightened that a similar incident might occur, so she tried to avoid Rosales by staying awake until she was sure Rosales was sleeping. A.B. testified that on one occasion, she was very tired and went to bed before her mother and siblings retired for the evening. On that occasion, A.B. was awakened by Rosales, who was pulling on the bed covers and sticking his hand under the covers on top of her. When A.B.

11

began to yell in protest, Rosales eventually left.[7] A.B. testified that Rosales did not attempt to molest her again after this second attempt.

Rosales contends the evidence is factually insufficient to support the verdict because C.B., who was sitting on A.B.'s lap during the first of such incidents, testified that she did not see any inappropriate action by Rosales toward A.B. Rosales claims that such evidence, coming from another alleged victim, is too weak to support a finding of guilt beyond a reasonable doubt.

The testimony of C.B. on this issue is quite brief:

> Q    [BY DEFENSE COUNSEL]  All right.  You never saw them when you was [sic] riding down the road in her lap in a pickup?
>
> A    [BY C.B.]  No.
>
> Q    So, you have no information one way or the other about that?
>
> A    If so, I don't remember.
>
> Q    You don't remember?  Well, it would be something you'd remember, wouldn't it?  If he acted improperly, sexually improperly, toward your sister, you'd remember that, wouldn't you?
>
> A    I don't know.  I have [sic] bad memory.  Certain things I remember, and certain things I don't.

This testimony is not a refutation of the testimony from A.B., the victim of the crime. Rather, it merely establishes that C.B. either did not see the incident described by A.B. or had no memory of it.  The inquiry of C.B. regarding this issue was limited to what C.B. actually saw.  At the time

---

[7]Testimony regarding this second incident was admitted without objection, even though it was not the subject of the indictment.

of the incident, since C.B. was sitting on A.B.'s lap, she would not have been likely to see the incident unless she turned around to look. Given the fact that there were six people (four of whom were children) crowded onto a single bench seat of a truck at the time of the incident, the fact that C.B. did not see the incident take place is not surprising and does not discredit the testimony given by A.B. on this issue. Although C.B. testified that she did not see the touching of which A.B. complained, C.B. did not offer any testimony that the incident about which A.B. testified did not occur. Because C.B.'s testimony neither confirms nor refutes A.B.'s testimony on this issue, it cannot amount to such "great weight and preponderance of the evidence" such that the verdict of the jury is "clearly wrong or manifestly unjust." *Lancon*, 253 S.W.3d at 705. We will not second-guess the jury on its determination, as great deference is to be accorded the verdict. *Roberts*, 220 S.W.3d at 524. This point of error is overruled.

For the reasons stated herein, we affirm the judgment of the trial court.

Bailey C. Moseley
Justice

Date Submitted:     November 24, 2009
Date Decided:     December 11, 2009

Do Not Publish